IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:14-CV-53-F

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| BERTIE AMBULANCE SERVICE, INC., | ) | |
| EDWARD L. LIPSCOMB, and ANNETTA | ) | |
| P. LIPSCOMB, | ) | |
| | ) | |
| Defendants. | ) | |

The instant matter is before the court on Defendants' Motion to Compel Discovery. [DE-20]. Plaintiff has responded in opposition to the motion. [DE-23]. For the reasons that follow, Defendants' Motion to Compel is denied.

## I. BACKGROUND

On August 28, 2014, Plaintiff brought this action against Defendants under the False Claims Act, 31 U.S.C. §§ 3729-33, following an investigation by the Office of Inspector General in the U.S. Department of Health and Human Services ("DHHS"). [DE-1]. Plaintiff alleges Defendants knowingly submitted false claims and related false records to the United States. *Id.* at 1 ¶ 1. Specifically, Plaintiff's Complaint alleges Defendants fraudulently submitted claims to Medicare and Medicaid for reimbursement for the ambulance transport of dialysis patients for whom ambulance transport was not medically necessary. *Id.*

On October 31, 2014, Defendants served their First Set of Interrogatories and First Request for Production of Documents upon Plaintiff, which requested, in relevant part:

> 6. All documents constituting, evidencing, or relating to

communications between you and any of BAS's current or former patients relating to any fact alleged in the Complaint.

7. All documents constituting, evidencing, or relating to communications between you and any of BAS's current or former directors, officers, employees, or agents relating to any fact alleged in the Complaint.

8. All documents constituting, evidencing, or relating to communications between you and any doctor, nurse, or other medical provider, or employee of any medical provider relating to any fact alleged in the Complaint.

Defs.' Mot. [DE-20] ¶ 2. On December 3, 2014, Plaintiff served its responses and objections. Defs.' Mem., Ex. B [DE-21-2]. Plaintiff indicated that Government agents prepared "Reports of Interview" based on interviews with numerous witnesses, including patients, family members, Defendants' employees, and medical providers, but asserted the Reports of Interview were protected by attorney-client, deliberative process, and work-product privileges. *Id.* at 19-21. After counsel for the parties failed to resolve the dispute, *id.*, Exs. C, D [DE-21-4, -21-5], Defendants filed the instant Motion to Compel [DE-20].

## II. DISCUSSION

Federal Rule of Civil Procedure 37(a)(3)(B) provides "that if a party declines to answer an interrogatory or request for production, the serving party 'may move for an order compelling an answer, designation, production, or inspection.'" *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010) (quoting Fed. R. Civ. P. 37(a)(3)(B)). "The party resisting discovery bears the burden of showing why it should not be granted." *Id.* (citing *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); *Rogers v. Tri-State Materials Corp.*, 51 F.R.D. 234, 247 (N.D. W. Va. 1970)).

2

A.  **Attorney-Client Privilege**

Defendants contend that Plaintiff has failed to meet its burden of proving attorney-client privilege and that the privilege does not apply to the Reports of Interview. Defs.' Mem. [DE-21] at 5-7. Plaintiff contends that the attorney-client privilege applies to the Reports of Interview. Pl.'s Resp. [DE-23] at 6 n.2.

> To determine whether the privilege applies, the following elements must be met:
>
> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 542 (E.D.N.C. 1993) (quoting *Republican Party of N.C.*, 136 F.R.D. 421, 425-26 (E.D.N.C. 1991)). "The proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (citations omitted).

While attorney-client privilege was briefly mentioned in a footnote in Plaintiff's response, Pl.'s Resp. [DE-23] at 6 n.2, the discussion was not sufficient to demonstrate the applicability of the attorney-client privilege. *See Santrade* 150 F.R.D. at 542. In its assertion of the attorney-client privilege, Plaintiff stated:

> [t]o the extent that the Reports of Interview were intended as communication to undersigned counsel by HHS Special Agent LeFaivre and were prepared at the direction, and for the primary benefit, of undersigned counsel, particularly the former EMT interviews conducted in 2014, these reports should also be treated as attorney-

3

client communication.

Pl.'s Resp. [DE-23] at 6 n.2. Plaintiff's speculative assertion that the communications were prepared at the direction of, and for the benefit of, undersigned counsel is not sufficient to establish the attorney-client privilege. *Maki v. United States*, No. 7:07cv443, 2008 WL 1756330 at *4 (W.D. Va. Apr. 16, 2008) (unpublished) ("The United States' bald assertion that certain documents were 'prepared at the request' of counsel 'for use in the performance of her duties as an attorney for the DVA' does not meet its burden of establishing that these documents are privileged from discovery under the attorney-client privilege. The mere fact that counsel requested certain documents to be prepared does not, in and of itself, meet the government's burden of establishing that the attorney[-]client privilege applies"). Further, Plaintiff failed to make any showing that the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, and for a legal purpose or that the privilege had not been waived. Pl.'s Resp. [DE-23]; *see Maki*, 2008 WL 1756330 *4. Accordingly, Plaintiff has not met its burden of proving the applicability of attorney-client privilege, and, thus, the privilege does not shield the Reports of Interview from discovery.

**B.     Deliberative Process Privilege**

Defendants contend that Plaintiff has failed to meet its burden of proving the applicability of the deliberative process privilege and that the privilege does not apply to the Reports of Interview. Defs.' Mem. [DE-21] at 7-8. Plaintiff did not address the deliberative process privilege in its response. Pl.'s Resp. [DE-23].

"To invoke the [deliberative process] privilege successfully, the government must show that, in 'the context in which the materials are used,' the documents are both predecisional and

4

deliberative." *City of Virginia Beach v. U.S. Dep't. of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993) (quoting *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1998) (en banc)). A document that has been "prepared in order to assist an agency decisionmaker in arriving at his decision . . ." is "predecisional." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). "Deliberative material reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *City of Virginia Beach*, 995 F.2d at 1253 (internal citations and quotations omitted). Although Plaintiff asserted the privilege in its response to Defendants' request for production, the bald assertion, without more, is not sufficient to demonstrate the applicability of the privilege. Defs.' Mem., Ex. B [DE-21-2] at 19-20; *see id.* Further, Plaintiff did not address the privilege in its response to Defendants' motion. Pl.'s Resp. [DE-23]. Plaintiff failed to make any showing that the documents were predecisional and deliberative. Accordingly, Plaintiff has not met its burden of proving deliberative process privilege, and the privilege does not shield the Reports of Interview from discovery.

C. **Work-Product Doctrine**

Defendants contend that Plaintiff has incorrectly asserted the work-product doctrine as a bar to Defendants' discovery request. Defs.' Mem. [DE-21] at 9-12. Specifically, Defendants contend the Reports of Interview were not prepared in anticipation of litigation or for trial and contain facts that are not protected by the work-product doctrine. *Id.* at 9. Alternatively, Defendants contend that if the work-product doctrine applies, Defendants have demonstrated a substantial need for the Reports of Interview compelling their production. *Id.* at 12.

In order for materials to qualify for the protection of the work-product doctrine, the proponent

5

of the protection must demonstrate the materials are "(1) documents or tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for the party or the party's representative." *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Companies*, 123 F.R.D. 198, 201 (M.D.N.C. 1988) (citing 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024 at 196-97 (1970 and 1988 Supp.)).

i. **In Anticipation of Litigation**

Defendants contend the Reports of Interview are not entitled to work-product protection because they were not prepared in anticipation of litigation. Defs.' Mem. [DE-21] at 10. Specifically, Defendants assert the Reports of Interview were prepared as part of the investigative process for DHHS and not in anticipation of litigation by the U.S. Attorney's Office. *Id.* at 10-12. Plaintiff contends that counsel participated in the DHHS investigation and the agent conducted the interviews in anticipation of litigation in coordination with counsel. Pl.'s Resp. [DE-23] at 5.

There are "several tests for determining whether a document was prepared in anticipation of litigation or for trial, or was prepared in the ordinary course of business." *Republican Party of N.C.*, 136 F.R.D. at 430 (citations omitted). The most frequently used test is: "[I]n light of the nature of the document and the factual situation in the particular case, can the document be fairly said to have been prepared or obtained because of the prospect of litigation?" *Id.* (citations omitted). "[T]he document must be prepared under the 'substantial and imminent' or 'fairly foreseeable' threat of litigation." *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542 (N.D. W. Va. 2000). In order to determine if a document was prepared in anticipation of litigation or in the ordinary course of business, courts "must proceed on a 'case-by-case' basis in consideration of facts indicating the circumstances under which the requested documents were prepared or created and are

6

sought in litigation . . . ." *Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 585 (S.D. W. Va. 2002).

Here, the Reports of Interview were prepared in anticipation of litigation. The U.S. Attorney's office formally opened a civil case in February 2007 to determine if a civil action should be brought against Defendant Bertie Ambulance. Pl.'s Resp., Ex. A [DE-23-1] at 2 ¶ 5. Agents Haire and LeFaivre met with U.S. Attorney Fowler and discussed the interviews starting in January 2009. *Id.* at 3 ¶¶ 8-9. It was understood by the agents conducting the interviews and U.S. Attorney Fowler that the Reports of Interview would be prepared and provided to Fowler. *Id.* at 3 ¶ 10. Further, many of the interviews were conducted at the direction of Fowler. *Id.* at 3,5 ¶¶ 13, 20-21. In September 2010, the United States and Defendant Bertie Ambulance engaged in settlement discussions prior to the filing of a civil action. *Id.* at 4 ¶ 18. All of the interviews conducted in 2014 occurred after the filing of the civil action by Plaintiff and upon the direction of Fowler. *Id.* at 5 ¶¶ 19-21. Most notably, LeFaivre stated that he "understood that all of the Reports of Interviews of Bertie Ambulance's patients and employees were prepared in anticipation of litigation against Bertie Ambulance." *Id.* at 5 ¶ 22. The open case file, settlement discussions, and involvement of U.S. Attorney Fowler show it can be "fairly said" that the Reports of Interview were prepared in anticipation of litigation. *Republican Party of N.C.*, 136 F.R.D. at 430. Further, beginning in 2007 when the civil case file was opened, litigation was "fairly foreseeable." *Kidwiler*, 192 F.R.D. at 542. Accordingly, the facts and circumstances direct a holding that the Reports of Interview were created in anticipation of litigation.

ii. **Fact Work-Product and Opinion Work-Product**

Defendants contend the Reports of Interview contain only facts that are not protected by the work-product privilege. Defs.' Mem. [DE-21] at 9. Plaintiff contends the Reports of Interview

7

contain a "mixture" of opinion work-product and fact work-product. Pl.'s Resp. [DE-23] at 12.

The work product doctrine is designed to "shelter 'the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *Republican Party of N.C.*, 136 F.R.D. at 429 (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). "[C]ourts have analyzed the [work-product] privilege in two contexts–fact work-product and opinion work-product." *In re Grand Jury Proceeding*, 102 F.3d 748, 750 (4th Cir. 1996) (citing *In re Grand Jury Proceeding*, 33 F.3d 342, 348 (4th Cir. 1994)). Fact work-product is defined as "those documents prepared by the attorney which do not contain the mental impressions, conclusions[,] or opinions of the attorney." *Republican Party of N.C.*, 136 F.R.D. at 429 (quoting *In re Doe*, 662 F.2d 1073, 1076 n.2 (4th Cir. 1981). Opinion work-product is defined as "work product that contains those fruits of the attorney's mental processes . . . ." *Id.* Fact work-product can be compelled upon a showing of substantial need and undue hardship. *Grand Jury Proceeding*, 102 F.3d at 750. However, "[o]pinion work product is especially protected by Rule 26(b)(3), which provides that in ordering discovery of trial preparation materials when the required showing has been made, a court 'shall' protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation in question." *Republican Party of N.C.*, 136 F.R.D. at 429 (quoting Fed. R. Civ. P. 26 (b)(3)).

In regards to witness interview memorandum, courts look at whether the content of the memorandum has been "sharply focused or weeded" by counsel. *U.S. Ex. Rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 429, 431 (D.D.C. 2014) (quoting *In re Sealed Case*, 124 F.3d 230, 236 (D.D.C. 1997), *rev'd on other grounds, Swidler & Berlin v. U.S.*, 524 U.S. 399 (1998)). Thus, courts have held "substantially verbatim witness statements contained in interview memoranda that

8

have not been 'sharply focused or weeded' by an attorney to be fact rather than opinion work product." *Id.* (citing *United States v. Clemens*, 793 F. Supp. 2d 236, 252 (D.D.C. 2011) (finding lawyers' notes of an FBI witness to be fact work[-]product where the lawyers did not shape the interview and the memoranda "accurately depict[ed] the witnesses' own words"); *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 12-13 (D.D.C. 2008) (attorney memoranda that were "nearly verbatim transcripts" of an FBI interview held to be fact work-product)). Conversely, when counsel "selected witnesses to be interviewed, selected the topics to be addressed with each witness, selected the documents to be shown to witnesses, led the interviews, and asked the questions," the memoranda were considered opinion work-product. *Tailwind*, 303 F.R.D. at 431-32.

In this case, the contents of the Reports of Interview for the interviews conducted in 2009 and 2010 were not "sharply focused or weeded" by the Plaintiff. *See id.* at 431. In Agent LeFaivre's declaration, he stated, "The timing, conduct, and information to be sought from the Bertie Ambulance interviews were *generally* discussed with U.S. Attorney Fowler before and after the interviews." Pl.'s Resp., Ex. A [DE-23-1] at 3 ¶ 9 (emphasis added). Further, the interviews took place without a government lawyer present, and the Reports of Interview are an accurate depiction of the witnesses' own words. Defs.' Mem., Ex. A [DE-21-1] at 16-18; *see Clemens*, 793 F. Supp. 2d at 252, 254 (lawyers' notes of a witness were fact work-product where the lawyers did not shape the interview and the memoranda "accurately depict[ed] the witnesses' own words"); *Tailwinds*, 303 F.R.D. at 432 (finding memoranda to be fact work-product where "[n]early half of the interviews took place without a government lawyer present and . . . all of the memoranda appear to be substantially verbatim agent summaries . . . ."). Although Agent LeFaivre met with counsel to generally discuss the interviews, that alone is not enough to rise to the level of "sharply focused or

9

weeded" by counsel. *Tailwinds*, 303 F.R.D. at 432 (finding memoranda to be fact work-product when the U.S. Attorney's Office set the general direction for the interviews but did not focus "the content of the memoranda themselves or particpate[] in drafting them . . . "). Accordingly, the Reports of Interviews for the interviews conducted in 2009 and 2010 are fact work-product.

However, the Reports of Interview for the interviews conducted in 2014 were "sharply focused and weeded" by counsel. *Id.* at 432. According to Agent LeFaivre's declaration, Fowler directed LeFaivre to "conduct additional interviews regarding specific issues" and "provided guidance regarding the additional information sought from former Bertie Ambulance EMTs." Pl.'s Resp., Ex. A [DE-23-1] at 5 ¶ 20. Plaintiff's lawyers "shaped the topics that were covered" and "framed the questions that were asked" in the interviews. *Tailwinds*, 303 F.R.D. at 432 (quoting *In re HealthSouth*, 250 F.R.D. at 12). The Reports of Interview for the 2014 interviews would tend to reveal the attorney's mental processes. *See Republican Party of N.C.*, 136 F.R.D. at 429 ("The work[-]product doctrine . . . seeks to shelter 'the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case'") (quoting *Nobles*, 422 U.S. at 238). As such, the Reports of Interview for the interviews in 2014 are opinion work-product and, thus, receive the highest level of protection. *Grand Jury Proceedings*, 102 F.3d at 750 ("Opinion work-product . . . is more scrupulously protected as it represents the actual thoughts and impressions of the attorney") (internal citations omitted).

### iii. Substantial Need

Defendants contend that if the work-product doctrine applies to the Reports of Interview, they have a substantial need for the Reports of Interview and would suffer undue hardship if the Reports were not produced. Defs.' Mem. [DE-21] at 12-14. Plaintiff contends the Defendants have failed

10

to establish substantial need and undue hardship necessary to compel protected work-product. Pl.'s Resp. [DE-23] at 9-15. As stated above, the Reports of Interview for the 2009 and 2010 interviews are fact work-product and subject to discovery upon a showing of substantial need and undue hardship by the requesting party. *Republican Party of N.C.*, 136 F.R.D. at 429 (stating fact work-product can be discovered if the requesting party shows substantial need and undue hardship). However, the Reports of Interview for the 2014 interviews are opinion work-product and require a higher showing to compel discovery. *Id.* ("To obtain disclosure of opinion work[-]product, a far stronger showing of necessity and unavailability by other means must be applied than the 'substantial need' and 'without undue hardship' standard . . . .").

If the party resisting discovery makes the required showing to the court that the work-product privilege applies, "the burden then shifts to the party seeking discovery to show, as to *each* document, substantial need and undue hardship." *Republican Party of N.C.*, 136 F.R.D. at 429 (emphasis in original) (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719 (5th Cir. 1985)); Fed. R. Civ. P. 26(b)(3). A showing of substantial need and undue hardship can be met if the party can show that the substantial equivalent of the materials cannot be obtained by other means. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (citing Fed. R. Civ. P. 26 (b)(3)). However, a showing of substantial need and undue hardship can only compel fact work-product. *Republican Party of N.C.*, 136 F.R.D. at 429. "[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances . . . ." *In re Doe*, 662 F.2d at 1080 (holding that an extraordinary circumstance existed to allow the compulsion of opinion work-product when an attorney attempted to use the work-product doctrine to shield himself from criminal prosecutions arising from his actions in the litigation).

11

In this case, Defendants have failed to meet their burden of showing substantial need and undue hardship for all of the Reports of Interview. Defendants rely on the passage of time between the interviews conducted by Agents Haire and LeFaivre and interviews that could be conducted now by Defendants. Defs.' Mem. [DE-21] at 13-14. However, the passage of time, standing alone, is not always sufficient to establish substantial need. *Bowling v. Appalachian Elec. Supply Inc.*, No. 3:13-cv-27347, 2014 WL 1404572, at *6 (S.D. W. Va. Apr. 10, 2014) (unpublished); *Maki*, 2008 WL 1756330 *5 (finding the passage of time and need to get factual information concerning the incident obtained closer to the date of the incident insufficient for proving a substantial need). Further, if a witness is available to the other party, discovery is generally not allowed. *Baker*, 209 F.3d at 1054 (citations omitted). Here, Defendants have failed to depose any of the witnesses. *Arney v. George A. Hormel & Co.*, 53 F.R.D. 179, 181 (D. Minn. 1971) ("The discovery of work[-]product material therefore may be denied if the party seeking discovery is able to obtain the information desired by other methods of discovery[,] such as taking the deposition of witnesses, and the costs or inconvenience of taking the deposition is not in itself sufficient showing to meet the 'undue hardship' requirements of the rule.") (internal citations omitted). Although Defendants have attempted to contact some of the witnesses by telephone with no success, "it is clear that the mere refusal of these witnesses to be interviewed by defendants' counsel does not constitute a sufficient showing of necessity to justify disclosure of otherwise privileged work[-]product." *United States v. Am. Optical Co.*, 37 F.R.D. 233, 238-39 (E.D. Wis. 1965) (citations omitted).

In regards to the Reports of Interview for Emma Boone and Mary Carroll, both of whom are now deceased, the Defendants still fail to make a sufficient showing of substantial need and undue hardship to compel discovery of this work-product. Although the death of a witness may be enough

12

to show substantial need, *In re Grand Jury Investigation*, 599 F.2d 1224, 1231-32 (3d Cir. 1979), Defendants have failed to show any measures taken to try to obtain the information from another source. Defendants merely state "Emma Boone and Mary Carroll are deceased." Poe's Decl. [DE-22] at 3 ¶ 12. In several instances, Agent LeFaivre interviewed the care provider or relative of a Bertie Ambulance patient instead of the patient. Pl.'s Mem., Ex. A [DE-23-1] at 4 ¶ 15. Thus, it appears to the court that interviews of a patient's care provider or relative could produce the substantial equivalent of an interview with the patient. *See Baker*, 209 F.3d at 1054 ("[Fact] work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means.") (citing Fed. R. Civ. P. 26(b)(3)). Defendants fail to show any effort to contact the care providers or relatives of Emma Boone or Mary Carroll. As such, Defendants have failed to meet their burden of proving substantial need and undue hardship to compel the discovery of protected work-product. However, this Order does not preclude Defendants from later making a showing of substantial need and undue hardship.

## III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel Discovery [DE-20] is denied.

SO ORDERED, the 25 day of June 2015.

Robert B. Jones, Jr.
United States Magistrate Judge

13